THE STATE, EX REL. BEATRICE FOODS CO., *v.* INDUSTRIAL COMMISSION OF OHIO ET AL.

(No. 84AP-567—Decided October
29, 1985.)

*Jack L. Johnson,* for relator.

*Anthony J. Celebrezze, Jr.,* attorney
general, and *Gerald H. Waterman,* for
respondent Industrial Commission.

*Charles R. Miller, pro se.*

STRAUSBAUGH, J. This is an original
action in mandamus filed in this court by
relator requesting that this court issue a
writ of mandamus ordering respondent,
Industrial Commission of Ohio, to va-
cate an order finding that medical ex-
penses are not compensated as contem-
plated by R.C. 4123.63 and to issue an
order so finding, to continue to reim-
burse relator for fifty percent of all
expenditures made in this claim, in-
cluding medical expenses, and to pre-
vent recoupment from relator of monies
previously reimbursed to relator for
medical expenses paid to respondent-
claimant. The court referred this action
to a referee, pursuant to Civ. R. 53(C)
and Loc. R. 11, Section 13, of the Tenth
District Court of Appeals, who rendered
a report and recommendation on March
5, 1985, including findings of fact and
conclusions of law.

Relator and respondent Industrial
Commission both filed objections to the
report and recommendation of the ref-
eree of the court of appeals, which
recommended that this court grant rela-
tor's request for a writ of mandamus
vacating an order finding that relator
had been overpaid $18,005.35, but deny-
ing relator's request for future medical
reimbursement.

The facts as found by the referee are
not disputed. Respondent Charles R.
Miller was injured on March 13, 1975
during the course of, and arising out of,
his employment with self-insured re-
lator. Respondent's claim for compensa-
tion was allowed by the Industrial Com-
mission and benefits were paid to re-
spondent-claimant. Sometime in the lat-
ter part of August 1979, relator filed an
application for handicapped reimburse-
ment pursuant to R.C. 4123.63 request-
ing reimbursement concerning service-
connected disabilities. On February 14,
1980, a hearing was held by a staff hear-
ing officer of the Industrial Commission
who issued an order of February 29,
1980 stating, in pertinent part, that:

"This claim came on for hearing
before Staff Hearing Officer, Forrest
Thaxton, who finds that notices were
sent to the claimant, the employer, their
representatives and the Administrator
of the Bureau of Workers' Compensa-
tion not less than 14 days prior to this
date.

"It is further the finding of the Staff
Hearing Officer that 50% of the claim be
charged to the Surplus Fund for service-
connected disability pursuant to 4123.63
of the Revised Code."

As a result of the hearing officer's
order, relator was subsequently reim-
bursed for fifty percent of lost time,
other compensation, and medical bene-
fits paid to respondent-claimant as a
result of respondent's allowed claim.
Reimbursement to relator of medical ex-
penses alone exceeded $18,000.

On June 25, 1983, the Administrator
of the Ohio Bureau of Workers' Com-
pensation issued an order stating, in
pertinent part, that:

"(Employer is overpaid $18,005.35)

"Section 4123.63 does not provide
for reimbursement of any medical ser-
vices.

"On hearing[s] of 4-25-80, 7-9-81,

11-16-81 and 8-24-82, $18,005.35 was paid to the employer for reimbursement of medical services they [*sic*] paid. Reimbursement for medical services was paid in error.

"Employer, Beatrice Foods Company is therefore overpaid $18,005.35.

"The Bureau therefore orders that the proper procedure be taken to collect above overpayment in order that Surplus Fund Section 4123.343 may be credited."

On June 13, 1983, relator objected to the administrator's order and requested a hearing. A subsequent hearing was held before the Industrial Commission which issued an order on April 18, 1984, stating that:

"Pursuant to the provisions of O.R.C. Section 4123.63 (effective 3-18-69), it is the decision of the Industrial Commission to construe the employer's 6-13-83 letter (date-stamped in file on 6-14-83) as a motion requesting the reimbursement of medical benefits paid under the instant claim.

"It is the further decision of the Industrial Commission to dismiss the motion for the reasons that monies expended for the payment of medical benefits are *not* 'compensation' and, as such, are not amounts properly subject to reimbursement under the statute.

"It is expressly found that the employer was granted a 50% service-connected injury reimbursement on 2-14-80.

"The claim file is referred to SHDDH for docketing before a D.H.O. on the following issues:

"1) the employer's 1-10-79 C086 [*sic*] motion (additional allowance); and,

"2) the employer's 12-10-82 C-86 motion (extent of disability)."

Relator instituted the instant action on June 15, 1984 contending that the Industrial Commission abused its discretion in finding that relator was not entitled to reimbursement for medical expenses. The parties have filed an agreed stipulation of pertinent portions of the Industrial Commission claim file as the evidence to be considered in this case. Also stipulated is the fact that no party appealed the district hearing officer's order dated February 14, 1980.

The referee determined that the term "compensation" as used in R.C. 4123.63 did not include medical benefits and therefore held that relator was not entitled to any future reimbursement of medical expenses. The referee also held that the district hearing officer's order permitting a charge-off to the Surplus Fund was a final order. The ultimate effect of this holding was to allow relator a $18,005.35 reimbursement for past medical expenses, but to deny further reimbursement from June 25, 1983.

Relator objects to that part of the referee's report which denied reimbursement of fifty percent of future awards.

Respondent objects to that part of the report which refused the Industrial Commission's order to relator to reimburse the sum of $18,005.35 to the commission.

Relator argues that the term "compensation" as used in R.C. 4123.63 includes medical benefits, in part because of the state's policy of encouraging employers to employ and retain veterans with service-connected disabilities. Relator urges that employers would not employ such veterans unless they expected to be reimbursed for oftentimes substantial medical expenses incurred by an employee as the result of an industrial injury. Respondent takes the opposite position.

Each side finds statutory support for its respective interpretation of compensation as contemplated by R.C. 4123.63.

We find that the term "compensation" as used in R.C. 4123.63 contemplates the payment of medical benefits.

The state has a policy of encouraging employers to hire veterans with service-connected injuries, expressed in a specific statutory provision. In this sense, R.C. 4123.63 is similar to R.C. 4123.343, the statutory provision designed to encourage employers to hire the handicapped, which provides for the cost of the disability attributable to the handicap to be charged to the Surplus Fund. While it is true that R.C. 4123.343 mentions both compensation and benefits, it is the *policy* which is the primary consideration. As this court has previously noted, the term "benefits" can constitute compensation depending on the wording and policy of the statute. See *State, ex rel. General Motors Corp.,* v. *Indus. Comm.* (June 15, 1978), No. 77AP-889, unreported.

It would appear to be the policy of the legislature by the enactment of R.C. 4123.63 to encourage the hiring by employers of veterans with service-connected injuries. There would exist little incentive for employers to hire veterans with a service-connected injury if an employer knows in advance that it cannot receive any reimbursement for medical benefits, which may arise at a future date.

Based upon the foregoing reasons, we find that respondent Industrial Commission is not entitled to any reimbursement of amounts already expended by the Surplus Fund. These payments were properly made in accordance with the February 29, 1980 determination of the staff hearing officer that fifty percent of the relator's claim be charged to the Surplus Fund. Therefore, respondent's objections to the referee's report are overruled.

We sustain relator's objections to the report of the referee and grant the issuance of a writ of mandamus ordering respondent Industrial Commission to vacate its orders of June 25, 1983 and April 18, 1984 seeking reimbursement and ordering the commission to continue the reimbursement of fifty percent of future medical benefits.

*Respondent's objections overruled;*
*relator's objections sustained;*
*writ granted.*

McCormac and Moyer, JJ., concur.